UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLARENCE A. MARTIN, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, D. WARDLOW, JESSICA THERAULT, D. SUDAH, J. WALLEN, MARK NEWKIRK,<br><br>Defendants. | CAUSE NO. 3:21-CV-860 DRL-MGG |

OPINION AND ORDER

Clarence A. Martin, Jr., a prisoner without a lawyer, filed a complaint alleging his grievances were mishandled and improperly rejected or denied, that he was moved to segregation without due process, and that he was retaliated against for refusing to cooperate with an investigation at the prison. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Martin makes numerous allegations about how his grievances were improperly processed or rejected. None states a claim because "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence

create interests protected by the Due Process Clause[.]" *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017).

Mr. Martin alleges he was denied due process when he was placed in segregation on December 14, 2020. He alleges he remained there after he was found not guilty of possessing a controlled substance on February 11, 2021. He says he was not released to general population until April 15, 2021. By his count, Mr. Martin asserts he spent 143 days in segregation (though only 123 days exist between December 14, 2020 to April 15, 2021 inclusive). He sues because he was denied due process.

The constitution does not require due process for all transfers within a correctional facility. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). After *Sandin v. Conner*, 515 U.S. 472 (1995), inmates have no liberty interest in avoiding a short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subject to harsher conditions as a result. An inmate is entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Even 90 days in segregation "was still not so long as to work an atypical and significant hardship." *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005).

If Mr. Martin's time in segregation was not an atypical and significant hardship, then he was not entitled to due process. If the conditions of his segregation were an atypical and significant hardship, then due process was required. Even then, the due

2

process required in such cases is minimal. When due process is required in connection with placement in segregation, an inmate is only "entitled to informal, nonadversarial due process." *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). The expectations of informal due process leave substantial discretion and flexibility in the hands of prison administrators. *Id*. at 685. "Informal due process requires some notice of the reasons for the inmate's placement and enough time to prepare adequately for the administrative review [that is held] within a reasonable time of the inmate's transfer [by] a single prison official [when] the inmate [is] given an opportunity to present his views [either orally or in writing, but not] a full-blown hearing." *Id*. 684-85 (quotation marks omitted). This informal process does not require live testimony, additional investigation, a record of the hearing, a written decision describing the reasons for the decision, or an appeal. *Id*. at 685-86. Though a periodic review is required, it too is an informal, non-adversarial process with sufficient frequency to prevent the process from being "a pretest for indefinite confinement" in segregation. *Id*. at 686.

Here, Mr. Martin's due process rights were not violated. The day after he was placed in segregation, he was charged with possession of a controlled substance—a major offense. Days later, he was recommended and then approved to remain in segregation while under investigation.[1] The next month, in January, his classification was considered again, and he was recommended for transfer to a level 2 facility. In February, that transfer

---

[1] Mr. Martin alleges Counselor D. Sudah falsified the report by approving her own recommendation. Even if this violated prison policy, the constitution does not specify who can approve classification decisions, and due process only required a single decisionmaker. *See Westefer*, 682 F.3d at 685.

3

was approved.² On February 11, 2021, Mr. Martin was taken for a disciplinary hearing and found not guilty of possessing a controlled substance. These disciplinary and classification processes provided Mr. Martin all of the process that was constitutionally due. Though he disagrees with the results, the due process clause "is not a guarantee against incorrect or ill-advised . . . decisions." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992).

After he was found not guilty, he was returned to segregation where he remained for two more months before being released to general population on April 15, 2021. It is unclear why he was held there, but this short-term extension of his otherwise constitutionally permissible placement was not long enough to trigger any additional due process concerns that had not already been accommodated. *See Westefer*, 682 F.3d at 684-86; *Lekas*, 405 F.3d at 612. Mr. Martin alleges he was denied due process when he was released to general population inside Indiana State Prison rather than being returned to his original housing unit, but the Constitution does not require due process before a transfer to general population. *See Wilkinson*, 545 U.S. at 222; *Sandin*, 515 U.S. at 484.

Finally, Mr. Martin raises several retaliation claims. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a

---

² Mr. Martin alleges Counselor D. Sudah refused to give him a classification appeal form. Even if this violated prison policy, due process did not require he be allowed to appeal.

4

motivating factor in the [the] decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks omitted).

Mr. Martin alleges that all the retaliatory actions taken by the defendants were motivated by his refusal[3] to provide information to internal investigations officers about an incident that occurred in the recreation yard on December 12, 2020. Though there is a split among the circuits[4] and the question has not been resolved here in this circuit,[5] the weight of authority supports holding that an inmate's refusal to cooperate with a prison investigation is not protected speech unless the inmate invokes his Fifth Amendment right against self-incrimination. *See Caffey v. Maue*, 679 F. Appx. 487, 490 (7th Cir. 2017) ("[P]risoners may be compelled to disclose information during internal investigations provided they are not punished for refusing to make self-incriminating statements

---

[3] Corrections Officer Jessica Therault retaliated "after Plaintiff <u>refused</u> to provide any information . . . .." ECF 2 ¶ 33. Major D. Wardlow retaliated "for Plaintiff's <u>refusal</u> to provide . . . any information . . . .." *Id.* ¶ 34. Counselor D. Sudah retaliated "for Plaintiff's <u>refusal</u> to provide . . . information . . . .." *Id.* ¶ 37. "Plaintiff remained in disciplinary segregation . . . for Plaintiff's <u>refusal</u> to provide information . . . .." *Id.* ¶ 38. Warden Neal retaliated "due to Plaintiff's <u>refusal</u> to provide . . . any information . . . .." *Id.* ¶ 39. Grievance Specialist Mark Newkirk retaliated "for Plaintiff's <u>refusal</u> to provide . . . information . . . .." *Id.* ¶ 58.

[4] *See Landor v. Lamartiniere*, 515 F. Appx. 257, 259 (5th Cir. 2013) (no protected interest in refusing to be an informant); *United States v. Paguio*, 114 F.3d 928, 930 (9th Cir. 1997) ("There is no constitutional right not to 'snitch.'"); *but see Burns v. Martuscello*, 890 F.3d 77, 92 (2d Cir. 2018) (finding a prisoner's refusal to be an informant was protected by the First Amendment).

[5] *See Clark v. Reed*, 772 F. Appx. 353, 355 (7th Cir. 2019) (inmate's right to refuse to cooperate with an investigation has not been clearly established in the Seventh Circuit); *Daniels v. Seymour*, 2020 WL 5405799 (C.D. Ill.) (same); *Nelson v. Stevens*, 2020 WL 2112270 (W.D. Wis.) (same); *Alvarez v. Thompson*, 2020 WL 1245340 (S.D. Ill.) (same); *Freeman v. Reichard*, 2017 WL 2645648 (S.D. Ill.) (same); and *McKinley v. Schoenbeck*, 731 F. Appx. 511, 514 (7th Cir. 2018) (speech is protected if inmate truthfully cooperates even if what he says is not what investigators want to hear); *Orozco v. Butler,* 2019 WL 2501866 (S.D. Ill.) (prisoner's right to refuse to be an informant not definitively established in Seventh Circuit).

without immunity.").[6] As in *Caffey*, Mr. Martin makes no mention "that answering the investigators' questions might incriminate him, so he was not privileged to refuse." *Id*. As such, he was not engaging in an activity protected by the First Amendment when he refused to cooperate with the Internal Investigations Officers.

In addition, there are additional reasons why three of the retaliation claims do not state a claim. Mr. Martin alleges Corrections Officer Therault and Major Wardlow retaliated against him by filing and approving a false conduct report charging him with possession of a controlled substance. This claim is similar to the one considered in *Nieves v. Bartlett*, 587 U.S. __, __; 139 S. Ct. 1715, 1724 (2019), which held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." Here, though Mr. Martin was ultimately found not guilty, probable case for charging him existed because K9 Zig Zag indicated there was a controlled substance in his locker. ECF 2-1 at 1.

Mr. Martin alleges Counselor Sudah retaliated against him by improperly signing a Report of Classification Hearing on the signature line of the Supervisor of Classification. In deciding whether an alleged act of retaliation would deter future First Amendment activity, the court applies "an objective test: whether the alleged conduct by the

---

[6] *See also Riggins v. Walter*, 279 F.3d 422, 431 (7th Cir. 1995) (inmate can be punished for refusing a polygraph examination); *McKinley v. Schoenbeck*, 2017 WL 1164938, at *5 (S.D. Ill.) ("[R]efusal to become a confidential informant and provide information about other inmates in the series of interviews conducted with Defendants in 2012 is not protected speech.") *modified on appeal by McKinley v. Schoenbeck*, 731 F. Appx. 511, 514 (7th Cir. 2018) (speech is protected if inmate truthfully cooperates even if what he says is not what investigators want to hear); *Clark v. Gipson*, 2015 WL 328966 (C.D. Ill.) (First Amendment does not prevent conditionalizing prison job on becoming an informant); *Knox v. Wainscott*, 2003 WL 21148973 (N.D. Ill.) (no protected interest in refusing to cooperate in an investigation).

defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks and citation omitted). A technical error related to a signature would not deter First Amendment activity since the classification decision had already been approved by the Classification Committee. An improper signature did not change the classification decision. ECF 2-1 at 2.

This complaint does not state a claim for which relief can be granted, but Mr. Martin may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint which was signed under penalty of perjury because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Clarence A. Martin Jr. until **March 29, 2022**, to file an amended complaint; and

(2) CAUTIONS Clarence A. Martin Jr. if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

February 24, 2022                                             *s/ Damon R. Leichty*
                                                              Judge, United States District Court